UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:20-cv-517

| | |
|---|---|
| **JOBBIE FLOWERS,** | |
| Plaintiff, | |
| v. | **COMPLAINT** |
| **ELECTROLUX NORTH AMERICA, INC.** | |
| Defendant. | |

## NATURE OF THE ACTION

1. Plaintiff brings this action against Electrolux North America, Inc. ("Electrolux" or "Defendant") for discrimination and retaliation based on race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII").

2. Plaintiff further brings this action against Electrolux North America, Inc. for discrimination and retaliation based on disability and/or perceived disability in violation of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA").

3. Plaintiff further brings this action against Electrolux North America, Inc. for wrongful discharge in violation of public policy under N.C. Gen. Stat. § 143-422.1, et seq.

## JURISDICTION AND VENUE

4. This action arises under federal statutes including Title VII and the ADAAA. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claims brought herein constitute a federal question under the laws of the United States.

1

5. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as the federal claims. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness and convenience for the parties.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Plaintiff was hired to work in this District and Defendant conducts business in this District.

7. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 23, 2020 on the basis of his race and/or disability, and Defendant's retaliation against him for complaining about said discrimination. The EEOC issued a Notice of Right to Sue on August 12, 2020.

## THE PARTIES

8. Plaintiff, Jobbie Flowers ("Plaintiff" or "Flowers"), is an African American male and at all relevant times resided in Charlotte, North Carolina.

9. Defendant, Electrolux North America, Inc. ("Electrolux" or "Defendant"), is an appliance manufacturer with headquarters in Charlotte, North Carolina, and is an employer within the meaning of the relevant laws and statutes.

## GENERAL ALLEGATIONS

10. Plaintiff was hired by the Defendant on May 23, 2011 as an Application Analyst in the IT Operations Department at Defendant's corporate headquarters in Charlotte, North Carolina.

11. Plaintiff was promoted at various times during his employment with Electrolux. Plaintiff's most recent promotion as Team Lead also included the following simultaneous roles: IT Application Support Team Lead, Change Advisory Board Lead for North America, IT General Control Audit Member, and Home Depot Relationship Manager. In these roles, Plaintiff was in

charge of reviewing development work and proposed programming for any and all changes to the IT system in North America. He then determined whether or not that change was to be approved and implemented.

12. At his end-of-year review in 2018, Plaintiff received all positive feedback regarding his performance.

13. In January 2019, Kopal Rawat was hired as Plaintiff's supervisor.

14. At this time, Plaintiff was the only African American on the IT team.

15. By June 2019, the treatment of Plaintiff by his supervisor, Kopal Rawat, had become unnecessarily aggressive and hostile. For example, Plaintiff shared his input on a particular project and was berated by his supervisor for offering his thoughts. Rawat communicated with Plaintiff in a hostile manner and scrutinized his performance at a greater rate than other employees similarly situated who were not African American.

16. In July 2019, in an effort to mitigate the situation, Plaintiff suggested that he and Rawat schedule a meeting with Alexa Moor (Caucasian), Human Resources, to discuss resolution. At that meeting, Plaintiff explained Rawat's discriminatory treatment. It was decided that Plaintiff and Rawat would meet on a regular basis to discuss any issues.

17. Rawat's mistreatment of Plaintiff worsened after Plaintiff sought assistance from Human Resources.

18. Thereafter and into September 2019, Plaintiff attempted to engage in meetings with Rawat but Rawat refused to participate in a productive manner.

19. On September 20, 2019, Plaintiff emailed Rawat requesting a mediator during their one-on-one meetings to prevent any miscommunication that can help in this type of situation. It was clear Plaintiff was referring to discrimination, as he specficially stated,"I was the Chairperson

for the Diversity and Inclusion Network at Hewitt for two years. Also, as you know, I am a community activist in both Mecklenburg and Forsyth County so I have some experience handling *these types of situations*." (emphasis added).

20. On or around September 26, 2019, Plaintiff emailed Brenda Simpson (Caucasian), Director of IT, to address the issues with Rawat and requested a third party be present when he and Rawat met. Simpson denied his request for assistance and told him "no one has time to deal with that." Further, Plaintiff suggested to Rawat that a mediator attend the one-on-one meetings, to no avail.

21. In late September 2019, while at work, Plaintiff was taken to the hospital and admitted into the Intensive Care Unit due to a pre-existing medical condition. Plaintiff immediately notified his employer and continuously kept Rawat up to date. Plaintiff was out of work for approximately three (3) days, after which Plaintiff requested forms for protected medical leave.

22. During Plaintiff's leave, Rawat continuously reached out to Plaintiff for advice on work-related issues.

23. After Plaintiff returned to work in early October, Rawat's retaliatory treatment increased even more.

24. At a meeting on November 8, 2019, just several weeks after requesting medical leave, Plaintiff was placed on a Performance Improvement Plan ("PIP") by Rawat. At that meeting, Simpson assured Plaintiff the PIP had nothing to do with his performance.

25. The PIP outlined the expectations of Plaintiff, but other than alleging that Plaintiff's work drive was low, the PIP was overly vague and did not indicate specific areas of needed improvement.

26. Upon information and belief, Simpson never saw any issues with Plaintiff firsthand and only acted on what was reported to her by Rawat.

27. The issuance of this plan was in direct retaliation for Plaintiff bringing his concerns of discrimination and disparate treatment by Rawat to Human Resource's attention and for missing time from work due to his medical condition.

28. Plaintiff continued to communicate with Rawat regarding his performance and requested feedback regarding the same, but Rawat once again failed to participate in the interactive process.

29. On November 29, 2019, Plaintiff, through an attorney, sent a letter to his employer in an attempt to formally identify and resolve Defendant's discriminatory and retaliatory behavior.

30. Instead of responding to Plaintiff and engaging in steps to rectify the situation, Defendant continued to retaliate by preparing and submitting unwarranted poor PIP monthly reviews and eventually terminated Plaintiff's employment on January 22, 2020.

31. Defendant used particular employment practices that caused disparate impact on Plaintiff on the basis of Plaintiff's race and/or medical condition. In this case, Defendant issued Plaintiff an unwarranted performance improvement plan. There were no other factors that motivated this practice.

32. Plaintiff was treated differently and harsher than similarly situated white co-workers under similar circumstances without justification. Such action by the Defendant creates an inference of race discrimination.

33. Defendant retaliated against Plaintiff for making charges of discrimination against his supervisor and opposing those practices deemed unlawful by Title VII of the Civil Rights Act of 1964, as amended.

34. Upon information and belief, Defendant has terminated at least three other employees who have or were perceived to have disabilities or medical conditions warranting an accommodation.

### FIRST CLAIM FOR RELIEF
### Discrimination and Retaliation on the Basis of Race
### Violation of Title VII of the Civil Rights Act of 1964, as amended

35. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

36. At all times relevant to this action, Plaintiff was an "employee" covered by the protections of Title VII of the Civil Rights Act of 1964 within the meaning of 42 U.S.C. § 2000e(f).

37. At all relevant times herein, Defendant employed at least 15 employees at all relevant times and is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

38. In doing the acts alleged above and herein, Defendant discriminated against Plaintiff on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq.

39. Defendant's discriminatory actions included, but were not limited to (1) limiting, segregating, or classifying Plaintiff in a way that adversely affected his opportunities or status as an employee because of his race; (2) utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of his race; (3) singling Plaintiff out for disparate and harsher treatment because of his race (3) retaliating against Plaintiff for making charges against his employer and opposing unlawful practices; and (4) discharging Plaintiff based on his race.

40. After Plaintiff, through an attorney, sent a letter to Defendant alleging discrimination based on race, Defendant retaliated by terminating his employment within two months, on January 22, 2020, without prior notice.

41. As a direct and proximate result of said conduct, Plaintiff has suffered lost past and future wages and job benefits and has suffered and will continue to suffer emotional pain, suffering, inconvenience, embarrassment, mental anguish, and other non-pecuniary losses in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**Disability Discrimination**
**Violation of Americans with Disabilities Act of 1990, as Amended**
**42 U.S.C. § 12101, et seq.**

42. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

43. At all relevant times, Defendant was an "employer" as defined by the ADAAA, 42 U.S.C §§ 12101.

44. At all relevant times, Plaintiff was an "employee" as defined by the ADAAA, 42 U.S.C §§ 12101.

45. In doing the acts alleged herein, Defendant violated the ADAAA. Due to Plaintiff's actual or perceived disability, Defendant took adverse employment actions against Plaintiff and eventually terminated his employment. 42 U.S.C. § 12112(a).

46. Prior to and at the time that Defendant terminated Plaintiff's employment, Plaintiff was qualified for the positions he held and/or sought.

47. Defendant's discriminatory actions included, but were not limited to terminating Plaintiff's employment.

48. Plaintiff has been damaged by Defendant's violation of the ADAAA inasmuch as Plaintiff has been unable to use his education and training and has suffered loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

49. Plaintiff is entitled to his attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 12205.

50. Plaintiff is further entitled to any and all relief permitted under the ADAAA, 42 U.S.C. § 12117(a), including equitable relief.

### THIRD CLAIM FOR RELIEF
### Wrongful Discharge in Violation of Public Policy – N.C. Gen. Stat. § 143-422.1, et seq.

51. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

52. Defendant employed at least fifteen (15) employees at all relevant times.

53. Defendant violated the public policy of North Carolina as set forth in N.C.G.S. § 143-422.1, et seq. by terminating Plaintiff because of a disability and/or in retaliation for bringing charges against Defendant.

54. Defendant violated the public policy by terminating Plaintiff after he exercised his rights and in good faith and opposed what he viewed as injurious conduct as set forth in the paragraphs above.

55. As an actual, proximate, and foreseeable consequence of Defendant's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

56. Defendant's actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

57. Defendant's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Jobbie Flowers respectfully requests that this Court enter judgment in his favor and grant him the following relief:

1. An Order awarding Plaintiff damages for Defendant's violation of Title VII of the Civil Rights Act of 1964, including backpay, lost wages, employment benefits, and any other compensation denied or lost because of Defendant's violation of Title VII of the Civil Rights Act of 1964;

2. An Order awarding Plaintiff damages for Defendant's violation of the ADAAA, including backpay, front pay, lost employment benefits, and any other compensation denied or lost because of Defendant's violation of the ADAAA;

3. An Order awarding Plaintiff compensatory damages for emotional distress, pain and suffering, inconvenience, and/or mental anguish in an amount to be proven at trial;

4. An Order awarding Plaintiff punitive damages under N.C. Gen. Stat. § 1D-115 in an amount to be proven at trial;

5. An Order awarding Plaintiff the costs of this action;

6. An Order awarding Plaintiff reasonable attorneys' fees;

7. An Order awarding Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

8. An Order granting any other necessary or appropriate relief to which Plaintiffs are entitled under the law.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

> */s/ L. Michelle Gessner*
> L. Michelle Gessner, NC State Bar No. 26590
> GESSNERLAW, PLLC
> Post Office Box 78161
> Telephone: (844) 437-7637
> Fax: (980) 206-0286
> E-Mail: michelle@mgessnerlaw.com
>
> *Attorney for Plaintiff*