UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| JOBBIE FLOWERS,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ELECTROLUX NORTH AMERICA, INC.,<br><br>　　　　Defendant. | Civil Action No. 3:20-CV-517-RJC-DCK |

### Declaration of Alexa Moor

I, Alexa Moor, being sworn according to law, state that the facts set forth below are true and correct to the best of my knowledge, information, and belief, and if called to do so, could testify truthfully thereto:

1. I was employed by Electrolux North America, Inc. from July 2018 until September 2019 as a Human Resources ("HR") Business Partner. I have personal knowledge of Jobbie Flowers' employment at Electrolux as a Team Lead, Application Support.

2. My duties at Electrolux included providing strategic support to my business partners; I supported Technology, Legal, Insurance/Risk, and a small sales support team. I provided guidance on all HR annual processes, including performance management, talent planning, compensation planning, and year-end ratings. I also supported employees with any employment or personal issues and guided them to the correct Center of Excellence (like benefits and payroll) if applicable.

3. On July 19, 2019, I received an email from Kopal Rawat, Jobbie Flowers' manager, stating that Mr. Flowers was interested in reaching out to HR. **Exhibit 1** contains a copy of that email and subsequent emails in the same email chain.

1

4. In response to Ms. Rawat's email, I asked Mr. Flowers and Ms. Rawat whether the inquiry regarded medical leave or some other HR-related question. Mr. Flowers responded that he wanted to meet with me to discuss a challenge he was facing. I scheduled a meeting with him for the next week.

5. In late July of 2019, I had a conversation with Kopal Rawat regarding Jobbie Flowers. Ms. Rawat told me that Mr. Flowers had been exhibiting performance issues. Specifically, Ms. Rawat said Mr. Flowers was not keeping her informed as to what he was working on, not working on tasks in the order that he had been instructed to work on them, and not executing on deliverables. "Executing on deliverables" means meeting expectations of the employee's position and delivering on the duties of his or her job. In addition, it means meeting deadlines or communicating any roadblocks preventing the employee from meeting a deadline in a timely manner.

6. This was not the first time I had been informed of performance issues concerning Mr. Flowers. Brenda Simpson had previously told me that she observed similar problems with Mr. Flowers' work performance when she was his direct manager, before Ms. Rawat was hired.

7. During my time at Electrolux, managers used performance improvement plans ("PIPs") in instances where an employee failed to meet the expectations of his or her position. This could be for an employee's poor work performance, inappropriate behavior toward coworkers or supervisors, or a violation of Electrolux's policies.

8. A PIP is intended to communicate Electrolux's clear expectations to the employee and set concrete deadlines for the employee to improve his or her performance. The goal of a PIP is for the employee to improve his or her performance. If the employee does so, then the PIP ends and the employee remains employed by Electrolux. If an employee fails to improve his or

2

her performance, then Electrolux may terminate the employee's employment, typically at the scheduled conclusion of the PIP.

9. If an employee showed gradual improvement during the pendency of the PIP, a manager could extend the length of the PIP to allow the employee more time to improve his or her performance. If the employee failed to show any improvement at all (or showed very little), the manager could end the PIP earlier than the scheduled date and terminate the employee's employment. Neither of these situations was unusual.

10. During my time at Electrolux, it was my usual practice to send a manager a PIP template upon learning that the manager intended to place an employee on a PIP. I did so to provide an example of how managers at Electrolux use PIPs to effectively communicate their expectations to the employee.

11. On July 24, 2019, after Ms. Rawat told me about Mr. Flowers' performance issues, I sent a template of a PIP to Ms. Rawat via email. A copy of that email and the PIP template attached to it are attached as **Exhibit 2**.

12. I thought it was important to send a PIP template to Ms. Rawat because I knew that she had been at Electrolux for under a year and had not previously placed an employee on a PIP.

13. To create a PIP template, I would take a copy of a PIP that had been issued to a different employee in the past and remove the employee's personal identifying information while leaving the rest of the content intact. That is what I did with the PIP template I sent to Ms. Rawat on July 24, 2019. I did not add any text to the PIP template specific to Jobbie Flowers.

14. I met with Jobbie Flowers on July 26, 2019, to discuss his concerns. During that meeting, Mr. Flowers told me that he was frustrated with Ms. Rawat and that they were having problems communicating effectively.

15. I never witnessed Jobbie Flowers state that he was being discriminated against on the basis of race or disability, at this or any other time. I never understood any of his complaints or other statements to mean that he was complaining about discrimination on the basis of race or disability.

16. I met with Mr. Flowers and Ms. Rawat together in early August 2019 to help them work through their communication issues. We discussed their concerns and how to resolve them, and the conversation ended on a positive note. I left the meeting feeling that the situation had been resolved.

17. In September 2019, I voluntarily resigned from my employment at Electrolux to take another job.

18. On September 17, 2019, the day before my last day at Electrolux, Brenda Simpson forwarded me an email exchange between Mr. Flowers and Ms. Rawat in which they discussed the minutes of a one-on-one meeting they had. That email chain is attached as **Exhibit 3**.

19. Because this was immediately before I left Electrolux, I forwarded the email exchange to HR Resources Director Dan Good.

20. During my employment with Electrolux, I did not know that Jobbie Flowers had diabetes or any other disability. I first learned that Flowers had a disability after the litigation of this case began, and after Flowers' employment with Electrolux had ended.

4

I declare, under penalty of perjury, that the above is true and correct to the best of my knowledge, information, and belief.

Executed at Charlotte, North Carolina on June 25, 2021.

_____
Alexa M. Moor